```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
WASHINGTON EDUARDO POLIT,                                    :
                                                             :
                              Plaintiff,                     :     14-CV-7360 (JPO)
                                                             :
               -v-                                           :     OPINION AND ORDER
                                                             :
GLOBAL FOODS INTERNATIONAL                                   :
CORPORATION,                                                 :
                              Defendant.                     :
------------------------------------------------------------ X
```

J. PAUL OETKEN, District Judge:

      Plaintiff Washington Eduardo Polit ("Polit") brings this action against his former employer, defendant Global Foods International Corporation ("Global Foods"), alleging violations of the Fair Labor Standards Act and the New York Labor Law.  Global Foods moves to compel arbitration and to dismiss the case.  For the reasons that follow, the motion is granted.

**I.     Background**[1]

      Polit alleges that he was employed as Executive Chef at Global Foods's restaurant at 11 Times Square in Manhattan from January 16, 2013 to July 17, 2014.[2]  (Dkt. No. 10 ("Am. Compl.") ¶¶ 12, 23.)  His duties as Executive Chef included "hiring, menu and concept development, supervising and developing vendor relationships, cooking, training staff, and teaching other employees of Global Foods throughout the world."  (*Id.* ¶ 13.)  When Polit was

---

[1] The following facts are taken from the allegations in the amended complaint, which are accepted as true for purposes of this motion, *see Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012), and from other documents submitted in connection with the motion.

[2] According to Global Foods, Polit was not hired until February 4, 2013.  (Dkt. No. 16 ("Def. Br.") at 4-5.)  It is unnecessary to resolve this factual dispute for the purposes of this motion.

...

hired, he was promised an annual salary of $80,000, along with two weeks of paid vacation and one week of paid sick leave per year.[3] (*Id.* ¶ 15.) Despite this promise, he was not compensated for his work in January 2013, and was paid only half of his salary in February 2013. (*Id.* ¶¶ 14, 16.) Further, Global Foods "compelled" Polit to prepare and teach several classes in a weeklong unpaid business trip to Russia in June 2013. (*Id.* ¶¶ 18-19.)

Polit alleges that on July 15, 2014, he approached the General Manager of Global Foods and requested to use or receive payment for the four unused weeks of vacation time that he had accrued over 18 months of employment with Global Foods. (*Id.* ¶ 20.) The General Manager denied the request, and two days later, Global Foods terminated Polit's employment "in retaliation," Polit asserts, "for his request to exercise his accrued, but unused, paid vacation time." (*Id.* ¶¶ 21-23.)

On September 11, 2014, Polit initiated the present action. (Dkt. No. 1.) In his original complaint, he contended that Global Foods is liable for unpaid wages and unlawful deductions from his salary in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"); unpaid accrued vacation and sick leave in violation of the NYLL; retaliatory discharge in violation of the NYLL; and failure to provide notices and wage statements as required by the Wage Theft Prevention Act, an amendment to the NYLL. (*Id.* ¶¶ 27-65.)

On October 7, 2014, Global Foods answered the complaint and asserted three affirmative defenses. (Dkt. No. 5 ("Answer").) As relevant here, the second affirmative defense reads as follows:

> The Complaint must be dismissed or otherwise the action should
> be stayed because Plaintiff signed an employment contract with
> Defendant that requires that disputes between the parties arising

---

[3] In April 2013, Polit's annual salary was increased to $100,000. (Am. Compl. ¶ 17.)

> out of Plaintiff's employment with Defendant are subject to mandatory arbitration.

(*Id.* ¶ 67.) Global Foods attached the employment agreement to its Answer. (*Id.* Ex. A ("Employment Agreement").) The agreement includes the following clause: "Any claim or controversy that arises out of or relates to this agreement, or breach of it, shall be settled by arbitration in accordance with the rules of the American Arbitration Association." (*Id.* ¶ 15.)

Global Foods also asserted two counterclaims against Polit: first, that he had breached his employment agreement by disclosing or threatening to disclose confidential business information and trade secrets to third parties, and second, that he had breached both his duty of loyalty and the employment agreement by "misappropriating Global Foods's trade secrets, threatening to disclose confidential information to competitors . . . and not dedicating his full professional time and attention to the business of Global Foods." (Answer ¶¶ 69-79.)[4]

On October 8, 2014, the case was referred to Magistrate Judge Sarah Netburn for all non-dispositive pre-trial matters. (Dkt. No. 6.) Judge Netburn held an initial pretrial conference on October 28, 2014. After the conference, she entered a scheduling order that permitted amendments to the pleadings within one month and ordered that all fact discovery be completed by February 27, 2015. (Dkt. No. 9.) On November 25, 2014, Polit filed an amended complaint, adding a claim that Global Foods had retaliated against his filing suit "by counterclaiming in its answer with wholly baseless causes of action." (Am. Compl. ¶ 72.)

On December 29, 2014, the parties filed a joint status letter. The letter reported that Polit had served Global Foods with written interrogatories and requests for production, that Global Foods "will be moving to compel arbitration in the near future," and that Polit "will oppose

---

[4] On October 27, 2014, Polit answered Global Foods's counterclaims. (Dkt. No. 8.)

[Global Foods's] motion to compel." (Dkt. No. 11.) Global Foods did not respond to Polit's discovery requests. (Dkt. No. 18 ("Pl. Br.") at 7.) Instead, on January 8, 2015, approximately four months after the action commenced, Global Foods filed the present motion to compel arbitration and to dismiss the complaint. (Dkt. No. 13.) Polit filed a brief in opposition (Dkt. No. 18), and Global Foods replied (Dkt. No. 20).

## II. Discussion

"A court determining whether a dispute is arbitrable must answer two questions: (1) whether the parties agreed to arbitrate; and (2) whether the particular dispute falls within the scope of that agreement." *Manos v. Geissler*, 321 F. Supp. 2d 588, 592 (S.D.N.Y. 2004) (citing *Hartford Accident & Indem. Co. v. Swiss Reins. Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001)).[5] Polit does not dispute that there is a valid agreement to arbitrate. He argues only that his post-termination retaliation claim does not fall within the scope of that agreement, and that, even if it does, Global Foods has waived its right to arbitrate all claims.

### A.   Scope of the Arbitration Agreement

The question whether a particular dispute falls within the scope of an arbitration agreement "is governed by the principle that, under the [Federal Arbitration Act], 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 171 (2d Cir. 2004) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). This is because "[t]here is a strong

---

[5] "[I]f federal statutory claims are asserted," a court must also consider "whether Congress intended those claims to be nonarbitrable." *Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008) (quoting *Oldroyd v. Elmira Sav. Bank*, 134 F.3d 72, 76 (2d Cir. 1998)). Polit does not contend that the claims at issue here are nonarbitrable. Nor could he, as courts in this district have repeatedly deemed FLSA and NYLL claims arbitrable. *See Reynolds v. de Silva*, No. 09 Civ. 9218 (CM), 2010 WL 743510, at *5 (S.D.N.Y. Feb. 24, 2010) (collecting cases).

federal policy favoring arbitration as an alternative means of dispute resolution." *Hartford Accident & Indem. Co.*, 246 F.3d at 226. At the same time, arbitration "is a matter of consent, not coercion," *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989), and thus "a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit," *Vera v. Saks & Co.*, 335 F.3d 109, 116 (2d Cir. 2003) (per curiam) (internal quotation marks omitted).

The Second Circuit has articulated the following approach for determining whether a particular dispute is within the scope of an agreement to arbitrate:

> (1) the district court must first determine whether the arbitration clause at issue is broad or narrow; (2) if the clause is narrow, the court must determine whether the particular dispute involves a matter that "is on its face within the purview of the clause" or a "collateral matter"; and (3) if the court determines that the arbitration clause is narrow and the particular dispute involves a "collateral matter," the court should not compel arbitration of that dispute.

*Manos*, 321 F. Supp. 2d at 592 (quoting *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001)).

Where the arbitration clause is broad, "there arises a presumption of arbitrability." *Louis Dreyfus Negoce S.A.*, 252 F.3d at 224 (internal quotation marks omitted). The presumption can be rebutted, however, if "the dispute is in respect of a matter that, on its face, is clearly collateral to the contract" that contains the arbitration clause. *Id.* (quoting *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 23 (2d Cir. 1995)). If it appears that the factual allegations underlying the dispute do not "touch matters" covered by the contract, *see Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987), then the dispute is collateral, and the court "should test the presumption by reviewing the allegations underlying the dispute and by asking whether the claim alleged implicates issues of contract construction or the parties' rights and

obligations under it," *Sykel Enters., Inc. v. Patra, Ltd.*, No. 03 Civ. 3364 (TPG), 2004 WL 719181, at *4-5 (S.D.N.Y. Mar. 31, 2004) (quoting *Collins & Aikman*, 58 F.3d at 23) (internal quotation marks omitted). "If the answer is yes, then the collateral dispute falls within the scope of the arbitration agreement; claims that present no question involving construction of the contract, and no questions in respect of the parties' rights and obligations under it, are beyond the scope of the arbitration agreement." *Collins & Aikman*, 58 F.3d at 23.

Polit argues, first, that the arbitration clause in his employment agreement is narrow, and second, that, in any event, it does not extend to his post-termination retaliation claim. (Pl. Br. at 1, 10.) These arguments are without merit.

First, the arbitration clause at issue here is a quintessential broad arbitration clause. It states that "[a]ny claim or controversy that arises out of or relates to [the employment agreement], or breach of it, shall be settled by arbitration." (Employment Agreement ¶ 15.) This is almost identical to the arbitration clause at issue in *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72 (2d Cir. 1998). That clause stated: "Any dispute, controversy or claim arising under or in connection with this [Employment] Agreement shall be settled exclusively by arbitration." *Id.* at 74. The Second Circuit concluded that the clause "represent[ed] the prototypical broad arbitration provision." *Id.* at 76; *see also Collins & Aikman*, 58 F.3d at 20 (holding that a clause "submitting to arbitration 'any claim or controversy arising out of or relating to the agreement,' is the paradigm of a broad clause" (brackets omitted)); *cf. Manos*, 321 F. Supp. 2d at 593 (holding that an arbitration clause in a settlement agreement was narrow where it applied "only to a single issue—whether plaintiff was terminated for just cause" and thus did "not purport to encompass all disputes that arise under" the agreement). Because the arbitration clause at issue

6

here is broad, there is a presumption that the entire dispute is subject to arbitration, including Polit's post-termination retaliation claim.

This presumption may be rebutted, however, if the post-termination retaliation claim is "collateral" to the employment agreement. This is not the case here.[6] The post-termination retaliation claim states that "[a]s a direct result of Plaintiff's filing of his initial Complaint, Defendant retaliated against Plaintiff by counterclaiming in its Answer with wholly baseless causes of action." (Am. Compl. ¶ 72.) The allegedly "baseless" counterclaims that Polit refers to are allegations by Global Foods that Polit misappropriated trade secrets and disclosed confidential information to third parties—acts that the employment agreement explicitly prohibits. (*See* Answer ¶¶ 69-79; Employment Agreement ¶ 6.) Because the factual allegations underlying Polit's post-termination retaliation claim "touch matters" covered by the employment agreement, the claim is subject to arbitration.[7]

### B.  Waiver of Right to Arbitration

---

[6] To the extent that Polit contends that his retaliatory discharge claim under the NYLL is also not arbitrable (*see* Pl. Br. at 10 (referring to "Counts Six and Eight of the Amended Complaint")), this argument fails as well. Where, as here, the employment contract addresses matters involving termination, "there can be no doubt that a retaliatory discharge claim touches matters covered by the employment contract." *Oldroyd*, 134 F.3d at 77 (holding that an arbitration clause almost identical to the clause at issue here encompassed the plaintiff's retaliatory discharge claim). As for the remaining claims in the amended complaint, Polit does not contend that they are outside the scope of the arbitration clause, and the Court holds that they are indeed subject to arbitration.

[7] An analysis of whether the counterclaims are in fact "baseless" will be necessary in the course of litigation, because a retaliation claim likely cannot proceed if founded on a legitimate lawsuit. *See Marchiano v. Berlamino*, No. 10 Civ. 7819 (LBS), 2012 WL 4215767, at *6 (S.D.N.Y. Sept. 20, 2012). Accordingly, even were Polit's post-termination retaliation "collateral" to his employment agreement, it would still be subject to arbitration because it certainly "implicates . . . the parties' rights and obligations under" the employment agreement. *See Louis Dreyfus Negoce S.A.*, 252 F.3d at 224 (internal quotation marks omitted).

Next, Polit argues that Global Foods "waived its right to arbitrate by untimely moving to compel arbitration." (Pl. Br. at 1.) "A party is deemed to have waived its right to arbitration if it engages in protracted litigation that results in prejudice to the opposing party." *S&R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 83 (2d Cir. 1998) (internal quotation marks omitted). In determining whether a party has waived its right to arbitrate, the Court considers "(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice." *Louis Dreyfus Negoce S.A.*, 252 F.3d at 229. Any doubts concerning waiver are resolved in favor of arbitration. *JLM Indus., Inc.*, 387 F.3d at 171.

These three factors do not counsel in favor of waiver here. With respect to the first factor, Global Foods waited only four months to request arbitration. Courts have found longer delays insufficient to merit waiver. *See, e.g.*, *PPG Indus., Inc. v. Webster Auto Parts Inc.*, 128 F.3d 103, 108 (2d Cir. Cir. 1997) (holding that a "five-month delay, by itself, is not enough to infer waiver of arbitration"); *Brownstone Inv. Group, LLC v. Levey*, 514 F. Supp. 2d 536, 540 (S.D.N.Y. 2007) (allowing recourse to arbitration after ten-month delay).

Turning to the second factor, the Court concludes that the litigation to date has been relatively minimal. There has been no motion practice other than the instant motion, and while Polit has made various requests for discovery, Global Foods has neither responded to these requests nor requested discovery itself. Thus, this factor also weighs against a finding of waiver. *See, e.g.*, *E. Fish Co.*, 105 F. Supp. 2d at 240-41 (finding no waiver where "[t]he complaint and answer [were] essentially the only pleadings that ha[d] been exchanged," "[l]ittle discovery ha[d] been conducted," and "[w]hile notices of deposition ha[d] been served on both sides, no deposition(s) ha[d] been conducted"); *cf. Leadertex, Inc. v. Morganton Dyeing & Finishing*

*Corp.*, 67 F.3d 20, 26 (2d Cir. 1995) (finding waiver where the defendant filed an answer, amended answer, and answer to an amended complaint; did not raise the issue of arbitration in any of the "initial court papers it filed"; "availed itself of the federal forum by its energetic pursuit of discovery"; and waited until seven months after the removal of the suit to federal court, "with trial imminent," to move to compel arbitration); *Com-Tech Assocs. v. Comp. Assocs. Int'l, Inc.*, 938 F.2d 1574, 1577-78 (2d Cir. 1991) (finding waiver where defendants participated in 18 months of litigation, including extensive discovery, and raised arbitration only four months before trial).

Finally, Polit has not shown that he will be prejudiced by arbitration. Prejudice is "[t]he key to a waiver analysis." *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 105 (2d Cir. 2002) (per curiam). "[T]here can be no waiver unless that conduct resulted in prejudice to the other party." *Leadertex, Inc.*, 67 F.3d at 26.

Polit asserts that he will suffer prejudice if compelled to arbitrate because many of the witnesses whom he needs to prove his claims and to respond to Global Foods's counterclaims are third parties, and an arbitrator lacks the authority to subpoena these third parties for discovery. (Pl. Br. at 8-9.) This concern is not the kind of prejudice that supports a finding of waiver. Prejudice in the arbitration context "refers to the inherent unfairness—in terms of delay, expense, or damage to a party's legal position—that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Louis Dreyfus Negoce S.A.*, 252 F.3d at 229-30 (internal quotation marks omitted).[8] "Prejudice does not refer to enforcing a

---

[8] The Second Circuit has identified two types of prejudice from a party's delay in compelling arbitration: "substantive prejudice and prejudice due to excessive cost and time delay." *Thyssen, Inc.*, 310 F.3d at 105. The former occurs, for example, "when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration," and the latter occurs "when a party too long postpones his invocation of his contractual right to arbitration, and

bargained-for agreement." *Id.* at 230. In other words, the waiver rule contemplates prejudice that results from a party's delay in moving to compel arbitration; the prejudice identified by Polit, however, exists irrespective of any such delay—it is inherent in the forum contemplated by the parties in their "bargained-for agreement."

Moreover, the likelihood of prejudice here is greatly reduced by the fact that Polit has been on notice for three months that Global Foods might assert its right to arbitration. The Answer, which was filed less than a month after the complaint, included mandatory arbitration as an affirmative defense. This was a "clear indication" of Global Food's "intention to invoke its arbitration rights." *PPG Indus., Inc.*, 128 F.3d at 109; *see also E. Fish Co. v. S. Pac. Shipping Co.*, 105 F. Supp. 2d 234, 241 (S.D.N.Y. 2000) (finding no prejudice where "Plaintiffs were on notice that Defendants might seek arbitration as soon as Defendants raised the arbitration issue in the answer").

In sum, after considering the length of the delay, the stage of litigation, and the alleged prejudice, the Court concludes that Global Foods has not waived its right to arbitration.

### C.     Motion to Dismiss

Global Foods also requests that the Court dismiss the case. The Federal Arbitration Act directs a district court to enter a "stay of proceedings" in cases where the claims are "referable to arbitration." 9 U.S.C. § 3. However, "courts have the discretion to dismiss—rather than stay— an action when *all* of the issues in it must be arbitrated." *Johnson v. Tishman Speyer Props., L.P.*, No. 09 Civ. 1959 (WHP), 2009 WL 3364038, at *4 (S.D.N.Y. Oct. 16, 2009) (internal

---

thereby causes his adversary to incur unnecessary delay or expense." *Id.* (internal quotation marks omitted). Polit has not shown either type of prejudice here.

quotation marks omitted); *see also Spencer-Franklin v. Citigroup/Citibank N.A.*, No. 06 Civ. 3475 (GBD) (GWG), 2007 WL 521295, at *4 (S.D.N.Y. Feb. 21, 2007) ("All courts of which we are aware have followed the rule that, where all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings." (internal quotation marks and brackets omitted) (collecting cases)), *report & rec. adopted*, 2007 WL 1052451 (S.D.N.Y. Apr. 5, 2007). Because the Court has determined that all of the issues raised in this action must be arbitrated, the Court exercises its discretion to dismiss this action without prejudice. *See, e.g., Drakeford v. Washington Mut.*, No. 07 Civ. 3489 (GBD), 2008 WL 2755838, at *4 (S.D.N.Y. July 11, 2008) ("Since this Court finds that all of plaintiff's claims against [defendant] are subject to arbitration, all claims against [defendant] are dismissed without prejudice.").

**III. Conclusion**

For the foregoing reasons, Defendant's motion to compel arbitration and to dismiss the case is GRANTED. The Clerk of Court is directed to close the motion at Docket Number 13 and to close the case.

Dated: April 20, 2015
New York, New York

SO ORDERED:

_____
J. PAUL OETKEN
United States District Judge